UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 7: 15-19-DCR |
| ) | |
| V. ) | |
| ) | |
| KLARISSA LASHEA RICE and JERRY ) | **MEMORANDUM OPINION** |
| LEE STEPP, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

*** *** *** ***

Defendants Klarissa Rice and Jerry Stepp have moved the Court to suppress evidence and statements obtained during and following a traffic stop of Rice's vehicle on September 24, 2015. [Record Nos. 58; 59] The defendants also have requested an evidentiary hearing on the issue. [Record No. 58, p. 1] The motions were referred to United States Magistrate Judge Edward B. Atkins for review and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was conducted on January 12, 2016, and reconvened on January 28, 2016. [Record Nos. 65; 88] Subsequently, the parties filed supplemental briefs. [Record Nos. 72; 73; 81; 82; 89; 92]

On February 12, 2016, Magistrate Judge Atkins issued his report, recommending that the co-defendants' motions to suppress be denied. [Record No. 93] Thereafter, the defendants filed objections to the Report and Recommendation.[1] [Record Nos. 98; 99]

---

[1] Because both Rice and Stepp filed objections to Magistrate Judge Atkins' Report and Recommendation, the Court will conduct a *de novo* review of the issues raised by the defendants. *See* 28 U.S.C. § 636(b)(1)(C).

Subsequently, the United States filed responses to the defendants' objections. [Record Nos. 105; 106] Having reviewed the record, the Court concludes that the motions to suppress should be denied.

## I.

The defendants assert that: (i) the investigatory stop of Rice's truck was unconstitutional under the Fourth Amendment; (ii) the subsequent search of the vehicle did not fall within the parameters of the automobile exception to the warrant requirement; (iii) the search of Stepp's person was not justified; and (iv) certain statements obtained from the defendants should be excluded under *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). [Record Nos. 58, p. 1; 59, p. 1] As a consequence, they argue that the subject evidence and statements should be suppressed.

The relevant facts are summarized by Magistrate Judge Atkins as follows:

> Working on information provided by a confidential informant, lead investigator Detective Amos Adkins learned that the informant was planning to travel with Klarissa Lashea Rice from Johnson County to London, Kentucky, to meet "Papaw" (later identified as William Harry Jones) to obtain a large quantity of methamphetamine. Though the informant did not know exactly when the trip would take place, she related that she agreed to travel to London with Rice. Det. Adkins provided the informant with a GPS tracking device and asked to be notified when the trip occurred. Later, at around 1:00 a.m. the next morning, Adkins observed the GPS tracker moving west on Ky Rt. 80 towards London, so he and other officers began preparations to intercept the vehicle upon its return.
>
> The informant had previously related to Det. Adkins that Rice possibly planned to evade officers if they attempted to stop her, so in order to ensure the safety of all involved, officers decided to conduct a safety checkpoint at a high visibility location on the Hal Rogers Highway near Hazard, Kentucky. The next contact from the informant was, according to Det. Adkins, a coded message indicating that the transaction was complete and Rice was in possession of methamphetamine. The GPS tracking unit then reflected that the

informant was proceeding east on Rt. 80, toward Johnson County. At around 4:00 a.m., Rice's green/blue Mitsubishi Eclipse approached and was stopped at the checkpoint. Inside the vehicle were Rice and Jerry Lee Stepp, who was riding as a passenger.

At the checkpoint, Tpr. Cure asked Rice to step out of her vehicle as a safety measure in the event there were firearms in the vehicle. Rice appeared visibly nervous and related a story that seemed unlikely to Tpr. Cure, and although Rice gave consent to search her vehicle, Cure conducted an open air search of the vehicle with his canine unit. During that search, the drug dog gave a positive alert to the presence of controlled substances on the rear seal of the driver's side door of the vehicle. Cure then told Rice that they would proceed with a search of the vehicle, and located a "wad of U.S. currency", possibly several thousand dollars, along with some notes, and paperwork with telephone numbers inside the vehicle.

Trooper Thomas was with Jerry Lee Stepp outside the vehicle while Cure finished searching the vehicle. As Cure approached the two, Thomas relayed that he had located a small bag of methamphetamine on Stepp. Cure heard Thomas ask if Stepp might be in possession of weapons or drugs, and if he would submit to a pat down search. In response, Cure testified that Stepp raised his arms and said "go ahead". At that time, a pat down revealed a larger bag protruding from Stepp's midsection which was seen when Stepp raised his arms, and which also contained a crystal-like substance later identified as methamphetamine. According to Cure, Det. Virgil Ray then approached indicating that he had discovered something which led him to believe either Rice or Stepp might be in possession of a weapon. When asked if there were any weapons, Stepp stated that Rice had a weapon. Trp. Cure then went to the police cruiser where Rice was being held, removed her from the vehicle and inquired of Rice where the weapon was located. Rice responded it was in the rear seat of the police vehicle where she had been placed and handcuffed. Upon searching the police vehicle, Cure found the firearm in the seat. At approximately 5:30 a.m., Defendants were transported to the KSP Hazard Post, were given their Miranda warnings, and each voluntarily signed a waiver of rights form.

[Record No. 93, pp. 1–3]

Because the United States conceded that the traffic stop was invalid as a roadblock under both Kentucky and federal law, the parties now dispute: (1) the reasonableness of the stop and search of Rice's vehicle; (2) the validity of the search of Defendant Stepp's person;

- 3 -

(3) the admissibility of the defendants' responses to questions posed by the officers at the search scene; and (4) the admissibility of the defendants' post-*Miranda* statements. [*See* Record No. 99, p. 2.]

## II.

### A.   Stop and Search

An officer may conduct a traffic stop if he or she has a reasonable suspicion that criminal activity is afoot. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). In other words, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In addition, "any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999), *cert. denied*, 528 U.S. 1176 (2000). However, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see also United States v. Davis*, 430 F.3d 345, 353–55 (6th Cir. 2005) (concluding that officers obtained reasonable suspicion "during the stop" to detain the defendant for an additional thirty to forty-five minutes before bringing a drug-sniffing dog).

In assessing whether reasonable suspicion justifies a stop, the Court may consider information obtained from an informant. *See United States v. Jones*, 75 F. App'x 334, 338 (6th Cir. 2003). Looking at the "totality-of-the-circumstances," the Court considers the informant's reliability and basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 233 (1983)

(anonymous letter supplied probable cause to search defendants' home and vehicle). Moreover, tips from an informant may establish probable cause to search a vehicle under the automobile exception to the warrant requirement. *United States v. Ross*, 456 U.S. 798, 800, 809 (1982); *see also Chambers v. Maroney*, 399 U.S. 42, 44, 52 (1970). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (internal quotation marks omitted). A drug-sniffing dog's positive alert can establish probable cause to search a vehicle. *See United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir. 1994).

Officers who stop a person "'reasonably suspected of carrying drugs' are 'entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions,' and to take reasonable measures to protect themselves.'" *United States v. Jacob*, 377 F.3d 573, 579 (6th Cir. 2004) (quoting *United States v. Heath*, 259 F.3d 522, 530 (6th Cir. 2001)). Further, officers may search passengers at a traffic stop if "specific and articulable facts" warrant a reasonable officer in believing that the passengers are "armed and dangerous." *United States v. Noble*, 762 F.3d 509, 525 (6th Cir. 2014). But "a person's mere presence in a car" linked to drug trafficking is "not an automatic green light for frisking that person." *Id.* at 523.

    **1.**    *Terry* **Stop**

Here, the magistrate judge properly concluded that the officers had at least reasonable suspicion to stop Rice's vehicle. [Record No. 93, p. 7] Detective Adkins testified to the reliability and basis of knowledge of the confidential informant who had previously been used to investigate drug transactions. [*Id.*] The detective was able to corroborate that Rice

planned on traveling to Georgia to acquire methamphetamine from "Mr. Jones." [*Id.*] Additionally, he corroborated information about Rice's residence, vehicles, and association with other suspects.

Rice takes issue with the fact that Adkins verified the informant's veracity by simply driving by Rice's residence and relying on other confidential informants' credibility. [Record No. 98, p. 4] An informant's tip should contain "a range of details relating not just to easily obtained facts." *Gates*, 462 U.S. at 245. While the confidential informant could have easily obtained information regarding Rice's residence and cars from mere observation, it would be more difficult for her to gain knowledge of Rice's criminal activities with others. *See id.* (finding that an anonymous tipster's accurate information concerning suspects' travel plans provided probable cause for a vehicle and residence search).

With respect to Rice's second objection, although Adkins' corroboration was based in part on information obtained from other confidential informants, that fact merely serves to weaken the corroboration, not destroy it. *See, e.g.*, *Tolbert v. United States*, 112 F. App'x 440, 444 (6th Cir. 2004). Once the detective confirmed that the informant was correct about Rice's travel plans to both Georgia and London and Rice's association with certain individuals, it was reasonable for him to rely on the informant's tips. In short, the officers had reasonable suspicion that criminal activity was foot, justifying the stop of Rice's truck. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause . . .").

Further, Rice objects to the reliability of the informant based on her status as a convicted felon. [Record No. 98, p. 4] While convicted felons are generally less credible

than the average citizen, this factor does not outweigh the factors supporting the informant's credibility. *See United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008).

Rice also objects to the reliability of the informant because she did not follow the instructions given by the detective. [Record No. 98, p. 4] Although this factor weakens the informant's reliability, her credibility is strengthened by other factors. For example, the GPS tracker showed movements to London shortly after she informed law enforcement that she and Rice would be going there for a vehicle/drug transaction; the informant sent Adkins a coded text about the transaction; and Rice's car was then seen returning from London. [Record No. 93, p. 7] Although the informant did not send Adkins an initial text on the ride to London and was not in the vehicle with Rice on the return trip, it was reasonable for the officers to trust the informant's tips, given the other indicia of reliability. *See Gates*, 462 U.S. at 233.

Stepp's objections largely mirror Rice's, but he also argues that the informant's reliability has not been established because the United States did not disclose her identity and because of the unknown timing of the London trip. [Record No. 99, pp. 4–5] While disclosure of an informant's identity may make her more reliable, *see United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002), the Supreme Court has found anonymous tipsters to be sufficiently reliable. *See, e.g.*, *Gates*, 462 U.S. at 244–45. And while the informant did not know all the details concerning Rice's trip to London, she had a credible track record and provided sufficient details about Rice to establish her basis of knowledge. *See, e.g.*, *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003). Under the totality-of-the-circumstances,

the informant's information was sufficiently reliable to establish reasonable suspicion for conducting a *Terry* stop of the vehicle.

### 2. Vehicle Search

The magistrate judge properly determined that probable cause existed to search the vehicle for drugs. *See Ross*, 456 U.S. at 809. [Record No. 93, p. 8] The officers had reliable information from the confidential informant, inconsistent statements from Rice, and a drug dog's positive alert. [*Id.*] Rice objects to the magistrate judge's reliance on her "nervous" appearance during the traffic stop, but even without that reaction, probable cause existed to justify the warrantless search. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Further, the magistrate judge found that Rice consented to the search of the automobile, and she does not object to that finding.[2] *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). [Record No. 93, p. 8] As a result, evidence seized from Rice's truck will not be suppressed.

### 3. Search of Stepp's Person

The magistrate judge concluded that the officers had reasonable suspicion that Stepp was armed and dangerous, justifying Trooper Thomas' search of Stepp's person. [Record No. 93, p. 10] Stepp objects to this finding, contending that: (i) his mere presence in the car could not have established reasonable suspicion; (ii) the officers unreasonably prolonged his detention after the initial stop; and (iii) the officers were actually searching for drugs. [Record No. 99, p. 6]

---

[2] As noted by the United States in its response to Stepp's objections, Stepp does not have standing to challenge the search of Rice's vehicle. *See United States v. Williams*, 354 F.3d 497, 510–11 (6th Cir. 2003). [Record No. 106, p. 2]

Regarding the first contention, the magistrate judge noted that Detective Adkins and Trooper Thomas were aware of Rice's prior association with Stepp through the confidential informant. [Record No. 93, p. 9]  Additionally, Thomas learned of Stepp's prior felony conviction before conducting the search of his person. [Record No. 99, p. 4]  As a result, the officers relied on more than Stepp's "mere presence" near the vehicle. *See Noble*, 762 F.3d at 523.

With respect to Stepp's second argument, the magistrate judge properly found that the officers had continued reasonable suspicion to detain both truck passengers. [Record No. 93, p. 10]  The drug dog alerted to the presence of drugs in the truck, and the informant had associated Stepp with Rice's drug-related activities. Consequently, it was not unreasonable for the officers to continue detaining the individuals for additional inquiry. *See Hill*, 195 F.3d at 264.  Further, with this knowledge, the officers were entitled to conduct a pat-down search of Stepp to ensure their safety. *See Jacob*, 377 F.3d at 579; *United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008).

Stepp's third contention is equally without merit. While the officers may have been subjectively searching for drugs, the test is an objective one. *See United States v. Brown*, 310 F. App'x 776, 780 (6th Cir. 2009) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).  Because the search of Stepp's person was reasonable, the drugs found on his person will not be suppressed.

Alternatively, the magistrate judge determined that Stepp consented to the search of his person by raising his hands when the trooper requested to search him. [Record No. 93, pp. 10–11]  "[T]here is no requirement that consent must be verbally given." *United States*

*v. Hinojosa*, 606 F.3d 875, 882 (6th Cir. 2010). However, Stepp asserts that, given the substantial period of time he was detained, he could not knowingly and voluntarily consent to a search. [Record No. 99, p. 7] Stepp provides no authority to support his assertion. Because the circumstances surrounding the consent indicate its voluntariness, the mere passage of time is insufficient to invalidate Stepp's consent. *See United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995) (considering the length of detention as one of several factors affecting the voluntariness of consent). Moreover, there is no evidence that the officers were coercive or aggressive in any way.[3] *See Hinojosa*, 606 F.3d at 881.

**B.    Statements at the Scene**

Rice and Stepp both seek to suppress statements regarding the gun found at the scene.[4] [Record Nos. 58, p. 7; 59, pp. 4–5] The magistrate judge concluded that the statements did not require *Miranda* warnings because they were in response to inquiries related to officer safety. *See United States v. Everett*, 601 F.3d 484, 495 (6th Cir. 2010); *United States v. Smith*, 427 F. App'x 413, 420 (6th Cir. 2011). [Record No. 93, p. 11] However, the defendants contend that neither was in a position to use the gun against the officers, indicating that officer safety was not at issue. [Record No. 99, p. 6]

Based on the information available to the officers at the time, a reasonable officer would have asked about the location of the gun. The officers knew that Stepp was carrying

---

[3]    As noted by the United States, Rice does not have standing to challenge the search of Stepp's person, except to the extent that she contends that the evidence should be suppressed as fruits of the illegal *Terry* stop. *See Williams*, 354 F.3d at 511. [Record No. 105, p. 3]

[4]    Again, each defendant has standing to challenge only the use of his or her own statements against himself or herself, except to the extent that each requests exclusion based on the illegal fruits doctrine. *See Williams*, 354 F.3d at 511.

drugs, they had found a gun magazine but no gun, and they knew from their reliable informant that Rice and her cohort might try to escape. [Record No. 93, p. 9] They reasonably feared for their safety. This reasonableness is strengthened by the fact that Rice had the gun in her possession when she was in the police cruiser. [*Id.*, p. 3] While she did not have access to it when the officers removed her from the cruiser, the officers were entitled to "draw reasonable inferences from their observations" that the gun could be within reach of one of the defendants. *See Smith*, 427 F. App'x at 420. Thus, the defendants' statements regarding the gun need not be suppressed for lack of *Miranda* warnings. *See Everett*, 601 F.3d at 495.

Because the defendants do not contend that any other statements occurred in response to questioning or interrogation, those statements are admissible because they were voluntary. *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966) (statements that are not the product of custodial interrogation do not require *Miranda* warnings).

   C. **Post-*Miranda* Statements**

Other incriminating statements took place after the defendants received *Miranda* warnings and signed waiver of rights forms. [Record No. 93, p. 11] The magistrate judge properly concluded that the defendants knowingly, intelligently, and voluntarily waived their rights and that there was no evidence of coercion. [*Id.*, p. 12] The defendants claim that the statements should be excluded as fruits of an illegal search and seizure. [Record No. 99, p. 7] However, because the search and seizure were constitutional under the Fourth Amendment, that argument fails.

Finally, the defendants allege that their waivers were involuntary because "[e]vidence had already been seized from the Defendant[s] unlawfully," and a significant amount of time had passed since the initial *Terry* stop. [*Id.*] This appears to be largely the same argument. Moreover, the duration of a search and seizure, alone, does not establish the involuntariness of a subsequently-acquired waiver. *See Fare v. Michael C.*, 442 U.S. 707, 726 (1979) (focusing on "all of the circumstances"). Because the United States has carried its burden to prove that the defendants voluntarily waived their rights against self-incrimination, the statements made after those waivers will not be suppressed. *See id.* at 724.

### III.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of Magistrate Judge Edward B. Atkins [Record No. 93] is **ADOPTED IN FULL** and **INCORPORATED** by reference.

2. Defendant Klarissa Rice's objections to Magistrate Judge Atkins' Report and Recommendation [Record No. 98] are **OVERRULED**.

3. Defendant Jerry Stepp's objections to Magistrate Judge Atkins' Report and Recommendation [Record No. 99] are **OVERRULED**.

4. Defendant Klarissa Rice's motion to suppress [Record No. 59] is **DENIED**.

5. Defendant Jerry Stepp's motion to suppress [Record No. 58] is **DENIED**.

This 2nd day of March, 2016.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge